Peelle, J.,
delivered the opinion of the court:
This action is to recover the balance due on compensation for services as consul at Paso del Norte, Mexico, which was withheld from the claimant to make good a shortage in the account of the consular agent at Nogales, Mexico, which latter, before the claimant’s appointment, had been embraced within the limits of the consulate at Paso del Norte.
The Act February 26,1889 (25 Stat. L., 702), appropriating $1,500 to pay the salary of a consul at Nogales, Mexico, for the fiscal year ending June 30, 1890, was passed long before the claimant’s appointment and like appropriations were made therefor during his continuance in office.
Before entering upon the discharge of his duties as such consul he was instructed therein by those having the matter in charge in the State Department; and among other things he was instructed that Nogales had been made an independent consulate and that he would have nothing to do therewith.
The only question presented therefore is as to whether or not the claimant can be held responsible for the failure of the consular agent at Nogales to account for the fees collected by him.
Under section 2, article 2, of the Constitution the President has the power to “nominate and by and with the advice and consent of the Senate shall appoint ambassadors, other public ministers find consuls * * * whose appointments are not *368 herein otherwise provided for, and which shall be established by law,” etc.
Under this provision of the Constitution the defendant’s counsel in his oral argument contended, relying upon the opinion of Attorney-General Cushing (7 Op. Atty. G., 186, cited in Byers’ Case, 22 C. Cls. R., 64), that the President has the power, the Senate consenting, to appoint consuls of any rank at any time and at any place; and that Congress could not extend or limit his power with reference thereto; and that although Congress may by law create a consulate by appropriating money to pay the salary of a consul at such place, yet the President, if he sees fit, may refuse to make such appointment, and may continue such consulate as a consular agency within the limits of another consulate.
We need not, however, pursue this line of thought further, as it is clear that under the provisions of the Constitution cited the President has the power to appoint consuls “which shall be established by law,” whatever his power may be otherwise.
Therefore, when Congress made the appropriation to pay the salary of such consul, although Nogales, as a consular agency, had theretofore been embraced within the limits of the consulate at Paso del Norte, we think it clear, even if no presumption existed in favor of the President making such appointment, that the appropriation was a sufficient warrant for him to do so. (See note to Supp. R. S., vol. 1, 2d ed., p. 118.)
The instruction in respect to Nogales as an independent consulate was doubtless based on the appropriation referred to, and may at least be regarded as an indication of what the practice of the Department had been under like appropriations, as well as the probable action of the President with reference thereto.
Consular agents, though appointed by the Secretary of State under a regulation of the President, usually on the nomination of the consul whose agent he is, are not regarded as officers of the United States within the meaning of Revised Statutes, section 1756, as they are not required to take the oath of office or to give bond to the United States, though through their respective consulates, to whom they are responsible, they are required to conform to the laws and regulations governing the consular service. (See pars. 477, 42, 23, and 36, Consular Regulations, and 9 Fed. R., 159.)
*369 After tbe appointment of a consular agent as indicated, tbe consul and sucb agent, under paragraph 477, Consular Begu-lations, may and usually do enter into an agreement “ as to tbe division of tbe receipts of tbe agency witbin tbe limit allowed to each for bis services; ” and paragraph 42 thereof provides that “no bond or oath of office is required of consular agents, but a consular officer having agents under bis supervision' may take from them sucb bond as be may deem proper for bis own protection.”
But tbe claimant, relying upon the instruction, as we think it was bis right and duty to do, especially in view of tbe appropriation theretofore made to pay tbe salary of a consul at Nogales, would not seek an agreement with the consular agent then serving there as to a division of fees, nor would be make sucb agent bis agent by requiring him to give a bond “for bis own protection,” as be might otherwise have done.
Tbe claimant was bound to know that under Bevised Statutes, section 1691, be was not permitted to bold tbe office of “consul at any other consulate or exercise tbe duties thereof.”
Under Bevised Statutes, section 1752, “tbe President is authorized to prescribe sucb regulations and make and issue sucb orders and instructions not inconsistent with tbe Constitution or any law of tbe United States in relation to tbe duties of all diplomatic and consular officers * * * as be may think conducive to tbe public interest,” and tbe same section provides that “it shall be tbe duty of all sucb officers to conform to sucb regulations, orders, and instructions.”
Consular officers are entitled by tbe provisions of Bevised Statutes, section 1740, to pay for tbe time actually and necessarily occupied in receiving their instructions. So that instructions to consular officers in relation to their duties are recognized by statute, as well as by consular regulations, and tbe statute makes it tbe duty of sucb officers to conform to sucb instructions.
We are unable to see that tbe instruction given was in conflict with tbe Constitution or with any law or regulation in relation to tbe duties of tbe claimant as sucb consul.
On tbe contrary, we think tbe instruction was not only prompted by tbe appropriation referred to, but that it was tbe right of those having tbe matter in charge to give tbe instruction they did; and tbe claimant having complied therewith, *370 and having received no other or different instructions until after the shortage charged to him had occurred, he is entitled to his compensation as such consul j and judgment will therefore be entered for the sum of $344.25.
Nott and Davis, J. J., were not present when this-case was tried and took no part in the decision.